UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

STEVEN MEARS,

                                    Petitioner,                          13-CV-08737 (AJN)(SN)

                 -against-                                               **REPORT &**
                                                                         **RECOMMENDATION**
HAROLD GRAHAM,

                                    Respondent.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE ALISON J. NATHAN:**

      *Pro se* petitioner Steven Mears filed a petition for a writ of *habeas corpus*, pursuant to 28

U.S.C. § 2254. Respondent moved to dismiss Mears's petition as untimely under the one-year

statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").

Because Mears filed his *habeas* petition more than three years after the statute of limitations

expired and because he failed to establish any valid grounds for equitable tolling of the

limitations period, I recommend that respondent's motion to dismiss be GRANTED.

## BACKGROUND

### I.     Conviction

      On May 19, 2004, a jury in the Supreme Court, New York County convicted Mears of

resisting arrest. He was sentenced to a jail term of one year. A mistrial was declared as to the

remaining counts because the jury was unable to reach a verdict: (1) Attempted Murder in the

Second Degree (N.Y. Penal Law §§ 110 and 125.25[1]); (2) Assault in the First Degree (N.Y.

Penal Law §§ 120.10[1], [3]); (3) and Criminal Possession of a Weapon in the Third Degree

(N.Y. Penal Law § 265.02[1]). On February 18, 2005, Mears's defense counsel filed a statutory speedy trial motion, which was denied on February 23, 2005. On March 9, 2005, after a retrial, a jury convicted Mears of one count of Assault in the First Degree, but acquitted him of Attempted Murder in the Second Degree. On August 22, 2005, Mears was sentenced to a prison term of eighteen years.

## II.     State Post-Conviction and Collateral Relief

### A.     Direct Appeal

On August 31, 2005, Mears timely filed a Notice of Appeal and subsequently filed a counseled brief in the Appellate Division, First Department challenging his conviction. On October 23, 2008, the Appellate Division unanimously affirmed petitioner's judgment. People v. Mears, 866 N.Y.S.2d 75 (1st Dep't 2008). On January 21, 2009, the New York Court of Appeals denied Mears's application for leave to appeal. People v. Mears, 11 N.Y.3d 927 (2009).

### B.     C.P.L. § 440.10 Motion, dated September 30, 2008

On September 30, 2008, while awaiting a decision on his direct appeal, Mears filed a *pro se* C.P.L. § 440.10 motion to vacate his judgment of conviction. On February 10, 2009, a justice of the Supreme Court, New York County denied the motion. Mears sought leave to appeal to the Appellate Division, First Department, and on April 15, 2009, the Appellate Division denied Mears's request for leave. Mears filed a motion for re-argument in the Appellate Division, which was denied on June 29, 2009.

### C.     Motion to Renew the C.P.L. § 440.10 Motion, dated May 17, 2009

On May 17, 2009, while awaiting a decision on his motion for re-argument, Mears filed a *pro se* motion to renew his C.P.L. § 440.10 motion in the Supreme Court, New York County. On

September 22, 2009, his motion to renew was denied, and Mears filed an application for leave to appeal to the Appellate Division. This application was denied on December 17, 2009.

### D.      Motion to Renew the Speedy Trial Motion, dated May 18, 2011

On May 18, 2011, Mears filed a *pro se* motion to renew the previously denied speedy trial motion. This motion to renew was denied on August 12, 2011. Mears sought leave to appeal the denial, but this application was denied on February 14, 2012.

### E.      Counseled Motion for Writ of Error *Coram Nobis*, dated November 9, 2011

On July 15, 2010, Mears's girlfriend, Tyneshia Williams, retained attorney Robert DiDio on Mears's behalf "to review and if viable issues [were] discovered, to prepare and file a CPL 440.10 and/or an error coram nobis motion." (Pl.'s Opp'n at 19.) In July 2010, Mears sent all of his legal documents to DiDio. DiDio filed a motion for a writ of error *coram nobis*, dated November 9, 2011. The Appellate Division denied this motion on January 26, 2012. Mears filed a *pro se* application for leave to appeal, which the Court of Appeals denied on July 2, 2012. Mears sought reconsideration of this decision, and on November 19, 2012, the Court of Appeals denied the motion for reconsideration. By March 2012, Didio had returned all of Mears's legal documents to him, except for 3,000 pages of transcripts. By July 2012, Mears had received the remaining legal documents.

### F.      C.P.L § 440.10 Motion, dated December 30, 2011

Mears filed another *pro se* C.P.L. § 440.10 motion on December 30, 2011, with an addendum filed on February 24, 2012. On May 22, 2012, his motion was denied. Mears sought leave to appeal, and on December 28, 2012, the Appellate Division denied his application for leave.

### G.     *Pro Se* Motion for Writ of Error *Coram Nobis*, dated November 7, 2012

Mears filed a *pro se* motion for a writ of error *coram nobis* in the Appellate Division, First Department on November 7, 2012. On May 21, 2013, the Appellate Division denied Mears's motion, and he sought leave to appeal the decision. On August 15, 2013, the Court of Appeals denied Mears's request for leave to appeal.

## III.     *Habeas* Petition

Mears filed his *pro se habeas* petition on December 3, 2013.[1] On January 31, 2014, the Honorable Alison J. Nathan referred the matter to my docket. On March 13, 2014, respondent filed a letter requesting an extension in the time to answer and indicating that Mears's petition was untimely. On March 14, 2014, the Court granted an extension in the time to answer and set a briefing schedule for respondent's motion to dismiss on timeliness grounds. Respondent's motion was filed on April 8, 2014, with supporting memorandum of law. Mears filed a response on June 4, 2014, and respondent filed a reply letter on June 20, 2014. Thus, the motion to dismiss is fully briefed.

## DISCUSSION

## I.     Standard of Review

Respondent's motion to dismiss is governed by 28 U.S.C. § 2254, as amended by AEDPA, and by the Federal Rules of Civil Procedure. See Adams v. Greiner, 272 F. Supp. 2d 269, 271 (S.D.N.Y. 2003). According to Habeas Rule 12, "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules,

---

[1] Mears's *habeas* petition was dated December 3, 2013. *Pro se* papers for incarcerated *habeas* petitioners are deemed filed on the date they are given to correctional authorities for mailing to the court. See Houston v. Lack, 487 U.S. 266, 270, 276 (1988). See also Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (applying this "prison mailbox rule" to the filing of a *habeas* petition). Therefore, the relevant date for determining timeliness is December 3, 2013.

may be applied to a proceeding under these rules." Rule 12 of the Rules Governing Section 2254 Cases in the United States District Court. See also Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus . . . to the extent that the practice in those proceedings is not specified in a federal statute [or] the Rules Governing Section 2254 Cases . . . .").

"Motions to dismiss habeas petitions on procedural grounds pursuant to Rule 12(b)(6) are not inconsistent with the Habeas Rules, given the wide discretion afforded district judges in the disposition of habeas petitions." Adams, 272 F. Supp. 2d at 271. See e.g., Purdy v. Bennett, 214 F. Supp. 2d 348 (S.D.N.Y. 2002) (considering a motion to dismiss on a *habeas* petition because allowing respondent to move to dismiss "avoided burdening the respondent with filing a formal answer in the event the respondent was able to raise a dispositive ground for dismissal").

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must take "factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When the plaintiff is proceeding *pro se,* the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.2010) (citation and internal quotation marks omitted). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). See also Brown v. Laclaire, 07 Civ. 5906 (KMW), 2009 WL 804131, at *2 (S.D.N.Y. Mar. 26, 2009) (applying the liberal standard to a *pro se*

petitioner's *habeas* submissions). "Although a court should generally refrain from considering matters outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to liberally construe pro se pleadings makes it appropriate to consider the facts set forth in plaintiff's opposition papers." Acheampong v. U.S., 99 Civ. 2169 (SWK), 2000 WL 1262908, at *4 (S.D.N.Y. Sept. 5, 2000) (citation and quotation marks omitted). See also Locicero v. O'Connell, 419 F. Supp. 2d 521, 525 (S.D.N.Y. Mar. 6, 2006) ("In the case of a motion to dismiss involving a claim by a *pro se* plaintiff, a court may look beyond the complaint to the plaintiff's opposition papers." (citation and quotation marks omitted)).

## II.    Analysis

### A.    Legal Standard

AEDPA requires a state prisoner whose conviction has become final to seek federal *habeas corpus* relief within one year. 28 U.S.C. § 2244(d)(1)(A). This one-year period serves the "well-recognized interest in the finality of state court judgments." Duncan v. Walker, 533 U.S. 167, 179 (2001). A petitioner's judgment becomes final 90 days from the date the New York State Court of Appeals denies leave to appeal – *i.e.*, after the "period to petition for a writ of *certiorari* to the United States Supreme Court." Pratt v. Greiner, 306 F.3d 1190, 1195 & n.1 (2d Cir. 2002).

The AEDPA tolls the one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." Evans v. Chavis, 546 U.S. 189, 191 (2006) (emphasis in original) (citing Carey v. Saffold, 536 U.S. 214

(2002)). "Courts in this circuit have held that the AEDPA Limitations Period is tolled while a petitioner seeks reargument before the Appellate Division of a denial of leave to appeal a State trial court's denial of a Section 440.10 motion, because such reargument may properly be sought under New York law." Smalls v. Smith, 05 Civ. 5182 (CS), 2009 WL 2902516, at *8 (S.D.N.Y. Sept. 10, 2009) (citing Rodriguez v. Portunodo, 01 Civ. 0547 (GEL), 2003 WL 22966293, at *2 (S.D.N.Y. Dec. 15, 2003) (collecting cases)). "Thus, a motion for reargument 'toll[s] the habeas clock . . . during the period between the [Appellate Division's] denial of leave to appeal . . . through . . . the [Appellate Division's] denial of reargument,' to the extent that the motion complies with the applicable laws and rules governing the filing of such a motion . . . ." Id. (quoting Rodriguez) (alterations in original).

The limitations period set forth in § 2244(d) is also "subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). "To be entitled to equitable tolling, [a petitioner] must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (citation and quotation marks omitted; alteration in original). Equitable tolling should be permitted only in "rare and exceptional circumstances." Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004). What constitutes an extraordinary circumstance is not the "unusual nature of the circumstance" but "how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). "Instances which justify equitable tolling include a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, a state appellate court's failure to inform a prisoner that his leave to appeal was denied, and . . . an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the

prisoner to do so." Id. (internal citations omitted). Furthermore, "actual innocence" may provide an "equitable exception" to the AEDPA limitations period. McQuiggin v. Perkins, 133 S. Ct. 1924, 1931-34 (2013).

**B.    Untimely Petition**

On October 23, 2008, the Appellate Division unanimously affirmed Mears's judgment of conviction, Mears, 866 N.Y.S.2d 75, and on January 21, 2009, the New York Court of Appeals denied Mears's application for leave to appeal, Mears, 11 N.Y.3d 927. Accordingly, under 28 U.S.C. § 2244(d)(1)(A), Mears's conviction became final 90 days later, or on April 21, 2009. Thus, absent tolling, Mears had until April 21, 2010, to file his *habeas* petition.

Under 28 U.S.C. § 2244(d)(2), this limitations period may be tolled for any time during which a properly filed motion or application for state post-conviction relief or other collateral review was pending. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). On September 30, 2008, while his direct appeal was still pending, Mears filed a C.P.L § 440.10 motion. Accordingly, the statute of limitations was tolled until July 2, 2009, the date of the Appellate Division's denial of Mears's request for re-argument of the C.P.L. § 440.10 motion.

In addition, Mears filed a motion to renew his 440.10 motion, which overlapped with his motion for re-argument. Therefore, the limitations period continued to be tolled until the Appellate Division denied leave to appeal the motion to renew on December 17, 2009. Given Mears's overlapping motions, the AEDPA one-year statute of limitations began to run on December 17, 2009, and Mears had until December 17, 2010, to file his *habeas* petition. He did not, however, file his petition until December 3, 2013, almost three years after the limitations period expired.

Mears argues that the date triggering the start of the AEDPA one-year period is August 15, 2013, the date the Court of Appeals denied his *pro se* motion for a writ of error *coram nobis*. This argument cannot succeed. All of the remaining motions filed by Mears, including his *pro se* motion for a writ of error *coram nobis*, were filed after December 17, 2010, the date upon which the one-year limitations period expired: (1) *pro se* motion to renew the speedy trial motion, dated May 18, 2011; (2) counseled motion for a writ of error *coram nobis*, dated November 9, 2011; (3) *pro se* C.P.L. § 440.10 motion, dated December 30, 2011; and (4) *pro se* motion for a writ of error *coram nobis*, dated November 17, 2012. Thus, the limitations period cannot be tolled during the pendency of any of these motions as none of them was timely filed under AEDPA. See Smith, 208 F.3d at 17 ("[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run."). See also Williams v. Breslin, 274 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (because more than one year had already lapsed between petitioner's conviction becoming final and the filing of a state motion for post-conviction relief, "any subsequent basis that would otherwise toll the applicable limitations period [was] inapposite"); Sanford v. Lee, 11 Civ. 5714 (JPO)(AJP), 2012 WL 2376953, at *2 (S.D.N.Y. June 22, 2012), rep. and rec. adopted by 2012 WL 3062692 (July 25, 2012) ("It is black letter law that a C.P.L. § 440 motion filed after expiration of the AEDPA limitations period does not start the one-year limitation period anew." (citing Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002))); Lopez v. Superintendent of New York State, 12 Civ. 3789 (JFB), 2013 WL 5445986, at *4 (E.D.N.Y. Sept. 27, 2013) (holding that although petitioner's first motion for a writ of error *coram nobis* tolled the AEDPA limitations period, his subsequent *coram nobis* petitions did not because they were filed after the limitations period had expired).

9

Accordingly, Mears's December 3, 2013 *habeas* petition is time-barred under 28 U.S.C. § 2244(d)(1)(A), absent a valid ground for equitable tolling.

## C.     Equitable Tolling

In his *habeas* petition and his opposition to respondent's motion, Mears raises three grounds for equitable tolling: (1) the need to exhaust his state remedies; (2) the discovery of "new issue(s) once an attorney reviewed all of his legal documents and informed him of his findings;" and (3) attorney "[l]axity and [n]eglect." (Pl.'s Opp'n at 2; see also Pet. at. 14-15.) None of these arguments is persuasive. First, 28 U.S.C. § 2244(d)(2) already takes into consideration the need for exhaustion, permitting the tolling of the limitations period for just such a purpose. Mears cannot argue that the need to exhaust his state remedies alone justifies further tolling of the period absent some additional claim of the impossibility of compliance. See Smith, 208 F.3d at 17-18 (rejecting petitioner's request for equitable tolling based on a need to exhaust state remedies because "the tolling provision of Section 2244(d)(2) already accommodates the exhaustion requirements that prisoners face"). A finding that the need to exhaust constitutes an "extraordinary circumstance" would eviscerate the one-year limitations period.

Mears's second argument, that his counsel, Robert DiDio, discovered new issues after the limitations period had expired, also fails. It is not clear which specific issues are contemplated by Mears. The only issue specifically identified is "the Forgery of the Victims Medical Record Documents." (Pl.'s Opp'n at 10.) Mears notes that DiDio "discovered this issue along with others." (Id.) The forgery issue was raised in Mears's November 9, 2011 *coram nobis* petition prepared by DiDio. Mears does not allege that new facts were discovered that formed the basis of this claim. If this were the case, the limitations period would not begin to run until "the date

on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Rather, Mears's argument that forged medical records were improperly admitted into evidence is based on facts that were in the record throughout the limitations period: "Appellate Counsel was ineffective for failing to see that [the] medical records were improperly admitted into evidence at trial without objection or challenge by trial counsel." (SR 578.) [2]

Mears contends that he was dependent upon DiDio to discover this and other issues because he is not a "trained attorney" and does not have a "Legal Research Certificate." (Pl.'s Opp'n at 10.) Mears argues that he could not have discovered that the signatures on the medical records were forgeries because he is not a handwriting expert. Mears's lack of training and legal knowledge, however, are the same difficulties many *pro se* petitioners face, and these difficulties alone do not justify equitable tolling. See Smith, 208 F.3d at 18 (petitioner's *pro se* status did not warrant equitable tolling). See also Wilson v. Bennett, 188 F. Supp. 2d 347, 354 (S.D.N.Y. 2002) ("lack of legal knowledge cannot excuse a delay in filing a petition"); Beaty v. United States, 11 Civ. 8596 (LAK), 2012 WL 383942, at *2 (S.D.N.Y. Feb. 7, 2012) ("[Petitioner] of course presumably was handicapped in filing earlier than he did by the fact that he is not well educated or trained in the law. But equitable tolling requires considerably more than that."). Thus, although Mears may have been hampered by his *pro se* status, he cannot be excused on this ground from diligently pursuing his claims and complying with the *habeas* procedural rules. He alone bore the burden of filing a timely *habeas* petition as he had not hired DiDio to file one on his behalf. See Edwards v. I.N.S., 59 F.3d 5, 8 (2d Cir. 1995) (*pro se* petitioner is "required to inform [himself] regarding procedural rules and to comply with them").

---

[2] All references to the state court record are to the records filed with respondent's motion to dismiss (See Doc. No. 16), and are identified as SR _.

Finally, Mears's claim of attorney laxity and neglect is insufficient to warrant equitable tolling. Mears alleges that his attorney failed to review his state record diligently and provide advice on his possible claims. As evidenced in the complaint and the attached documents, Mears appears to have been under the impression that DiDio would be filing a *habeas* petition on his behalf and received assurances from DiDio that there was "plenty of time" to file a *habeas* petition. (Compl. at 19.) Mears acknowledges, however, that when he reviewed DiDio's retainer agreement, the agreement made no mention of a writ of *habeas corpus*. The retainer agreement shows that DiDio agreed to review Mears's state court records and to prepare and file state court motions, such as a C.P.L. § 440.10 motion or a motion for a writ of error *coram nobis*. There is no evidence that DiDio had in fact agreed to file a *habeas* petition on Mears's behalf. Compare Holland, 560 U.S. at 653-54 (remanding for reconsideration of equitable tolling where an attorney appointed to represent petitioner in all post-conviction proceedings failed to file a timely *habeas* petition after repeated requests by petitioner); Dillon, 642 F.3d at 363-64 (finding equitable tolling appropriate where attorney knowingly misled petitioner by promising to file a petition by a specific date but failed to do so). Mears has failed to demonstrate that DiDio intentionally deceived him or failed to do what he promised with regard to his *habeas* petition. Even if DiDio incorrectly informed Mears that there was "plenty of time" to file his petition, counsel's misunderstanding or miscalculation of the AEDPA statute of limitations would constitute "garden variety . . . excusable neglect," Id. (quoting Holland, 560 U.S. at 651-52), and did not discharge Mears from his duty to file his petition by the December 17, 2010 deadline, of which he was aware.[3]

---

[3] In his letter to DiDio, dated October 19, 2010, Mears identifies the end of the limitations period as December 11, 2010, rather than December 17, 2010. In this letter Mears indicates that he does not want to lose his right to file a *habeas* petition, even though he has not yet exhausted all his state remedies. He

Mears also claims that DiDio's failure to return his legal documents prevented Mears from timely filing his *habeas* petition. In July 2010, Mears mailed all his legal documents to DiDio and did not receive all of the documents back until July 2012.[4] While the documents attached to Mears's opposition suggest that Mears refused to accept a box of legal documents sent by DiDio in March 2012, and insisted that the voluminous state transcripts be mailed to his facility, rather than picked up by a relative, the Court will assume for this motion that the delay in returning Mears's legal documents was attributable solely to DiDio.

Even if the Court were inclined to toll the period of limitations until July 2012, the date Mears identifies as his date of receipt, Mears did not file his *habeas* petition for another 17 months, until December 6, 2013. Mears does not offer any explanation for the delay between the time he received his documents and the time he filed his petition. Given that "federal courts are to take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions" in "extraordinary circumstances" where a petitioner's ability to file timely is "impossible," Rhodes v. Senkowski, 82 F. Supp. 2d 160, 167 (S.D.N.Y. 2000) (citation and quotation marks omitted), a delay of this length does not demonstrate the diligence required for equitable tolling.

While the Court recognizes that Mears did at times diligently pursue his legal rights over several years, it cannot be said that he did so *throughout the entire limitations period*, as is required for equitable tolling. See Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003) ("To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with

---

acknowledges that he is one month and three weeks away from the deadline. Nowhere in the letter does Mears specically ask DiDio to file a petition or indicate that DiDio promised to do so.
[4] It appears that all of Mears's legal documents were returned to him by March 2012, except for the 3000 pages of transcripts. (See Pl.'s Opp'n at 32.)

reasonable diligence throughout the period he seeks to toll." (quoting Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001)); Collins v. Artus, 496 F. Supp. 2d 305, 313-314 (S.D.N.Y. 2007) ("the party must show that he was unable to pursue his legal rights during the entire period that he seeks to toll"). Alhough Mears's *pro se* C.P.L. § 440.10 motion to renew was denied in December 2009, Mears did not hire DiDio to look into his state claims until July 2010, six months after the limitations period began to run. Nor did he file any other state motions during this period. Thus, even if DiDio was unprofessionally slow in assessing Mears's state claims and discovering additional claims, the Court cannot conclude that this was the cause of Mears's failure to file timely a *habeas* petition. Mears knew of the impending December 2010 deadline, but waited six months to seek the advice of counsel and did not file a "barebones" petition himself when DiDio's assessment was not forthcoming. See Baldayaque, 338 F.3d at 150 ("To show that extraordinary circumstances prevented him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." (quoting Hizbullahankhamon, 255 F.3d at 75 (2d Cir. 2001))); Harper v. Ercole, 648 F.3d 132, 142 (2d Cir. 2011) ("equitable tolling is granted only when the extraordinary circumstances are responsible for a filing delay"). See also Serrano v. Smith, 03 Civ. 9107 (NRB), 2005 WL 1802864, at *7 (S.D.N.Y. July 29, 2005) (finding no grounds for equitable tolling when the petitioner could have submitted a "barebones" petition even though he lacked his legal papers).

Given that Mears was aware of the December 2010 deadline, that counsel never agreed to file a *habeas* petition on his behalf, and that Mears waited 17 months to file his *habeas* petition

after receiving his legal documents, the Court finds that the circumstances here are not "rare and exceptional" and do not warrant equitable tolling of the limitations period.[5]

## CONCLUSION

Because Mears filed his *habeas* petition three years after the limitations period expired and has provided no valid grounds for equitable tolling, I recommend that respondent's motion to dismiss be GRANTED. Because Mears has not made a substantial showing of the denial of a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, that *in forma pauperis* status be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

*          *          *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ .P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2) (C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. §

---

[5] Actual innocence may also provide an "equitable exception" to the limitations period. McQuiggin, 133 S. Ct. 1924. Mears, however, raises no such argument in his *habeas* petition or opposition.

636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Nathan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge


DATED:   New York, New York
            July 11, 2014


cc:      Steven Mears (*By Chambers*)
         DIN #05A5972
         Governeur Corr. Facility
         P.O. Box 480
         Governeur, NY 13642